IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| MARY E. CANNING, | ) | CASE NO. _____ |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| CREIGHTON UNIVERSITY | ) | COMPLAINT AND PRAECIPE |
| | ) | AND REQUEST FOR JURY TRIAL |
| Defendant. | ) | |

COMES NOW the Plaintiff and for her cause of action states as follows:

### PARTIES

1. Plaintiff, Mary E. Canning, is a resident of Lincoln, Lancaster County, Nebraska, and a former employee of Creighton University.

2. The Defendant is an employer with more than 20 employees, operating a full care hospital in Omaha, Nebraska. The Defendant is an employer with more than 20 employees, operating an Internal Medicine Graduate Medical Education Program and has entered into affiliation arrangements with that program in Omaha, Nebraska. Per Defendant Graduate Medical Education Program Agreement, by virtue of the affiliate hospital arrangement, the trainee is appointed as house staff at the affiliate hospitals.

3. Plaintiff has previously filed a charge of discrimination. She obtained a right-to-sue letter on November 18, 2017. All administrative prerequisites have been met.

4. Jurisdiction and venue in this Court are proper.

### FACTUAL ALLEGATIONS

5. Plaintiff is a 60 year-old female who worked and trained as an Internal Medicine Resident Physician at the Defendant's Graduate Medical Education training program beginning on

July 1, 2015 at the age of 57 years old.

6. Many of the other resident physicians at the Defendant's Internal Medicine Graduate Medical Education Program were much younger, and from foreign countries.

7. Plaintiff was completing her work duties and training as a resident.

8. On or about July 2015, while working and training at affiliate hospital of Defendant, Plaintiff encountered a fellow senior resident, Dr. Goyal, a younger male, and foreign born, who made inappropriate comments to Plaintiff regarding her management of a patient. Plaintiff regarded those comments as threatening and harassing. At this time, the fellow senior resident was not in a supervisory role with Plaintiff, but did later become Plaintiff's supervisor on or about December, 2015.

9. In early December 2015, Plaintiff met with her then Faculty Mentor, Dr. Theresa Townley for the standard semi-annual performance review. Plaintiff was shown a numerical point score graph of ACGME training milestones compiled for all residents. Plaintiff was told by her Faculty Mentor that some of her scores were low, but to keep working hard, and there was no major cause for alarm.

10. In December, 2015, Plaintiff was treated in a hostile and discriminatory manner by supervising resident Dr. Gaurev Goyal, including an accusation that Plaintiff had dementia. This treatment was discussed by Plaintiff with Dr. Jason Lambrecht and Dr. Mahmoud Abu-Hazeem.

11. In January 2016, Dr. Lambrecht told Plaintiff that she may be asked to repeat her intern year. He also asked Plaintiff if Dr. Goyal has bothered her.

12. On January 22, 2016, Plaintiff was called to a meeting with then Program Director, Dr. Tammy Wichman, and was asked to repeat the Intern year. Plaintiff agreed with Dr. Wichman's

decision. Plaintiff was told by Dr. Wichman that her salary in the repeat year would be funded not by Medicare, but another source. Associate Program Directors, Dr. Erica Cichowski and Dr. Bradley DeVrieze were also present. Also at this meeting, Dr. Erica Cichowski asked Plaintiff if she would be willing to meet with a Dr. Geoffrey Anderson, a psychologist. Dr. Cichowski stated, "Dr. Anderson is a psychologist and he can help you learn."

13. In January 2016, Dr. Wichman announced that she was resigning her position to assume a new position as a Pulmonologist with the University of Nebraska Medical Center. Dr. Cichowski was made the new Program Director.

14. On February 12, 2016, Dr. Bradley DeVrieze confronted the Plaintiff about having "memory problems", and claimed Dr. Lambrecht mentioned it. Plaintiff denied having memory problems. Dr. Cichowski was also present and was emotionally distraught, stating "I can't wrap my head around this." Dr. DeVrieze asked Plaintiff if she had met with Dr. Anderson yet. Plaintiff replied she had not.

15. Plaintiff received an email on February 9, 2016 from Dr. Anderson, identifying himself as the Defendant Director of Academic Affairs for Graduate Medical Education, and outlining the purpose of the proposed meeting with Plaintiff, which was a plan of remediation to assure a successful outcome in the repeat Intern year.

16. On February 16, 2016, Plaintiff met with Dr. Anderson. Plaintiff did not give her consent to have her mental health in any way evaluated by Dr. Anderson in his meeting. Dr. Anderson became agitated when Plaintiff responded with her same honest answer to his repeated questions. Dr. Anderson threatened here when he stated, "We will keep testing you" and "You don't understand what they're trying to do to you."

17. On February 18, 2016, Plaintiff was called to a meeting with the Program Director, Dr. Erica Cichowski and Associate Dean, Dr. Joann Porter, and was told she was being placed on an immediate leave of absence to undergo neuropsychological testing, and that her contract would not be renewed. Dr. Cichowski was extremely distraught and told the Plaintiff, "You are not safe for yourself, and you're not safe for patients." Dr. Porter stated, "It's like a pilot" and also stated, "We can help you get a job in research." Dr. Porter also made reference to Dr. Anderson in this meeting. Plaintiff asked Dr. Cichowski if she would at least be able to come back and finish the remaining 4 months of residency training. Dr. Cichowski indicated it was unlikely.

18. Plaintiff was later informed that she allegedly had some psychiatric issues, according to Dr. Anderson's report. Defendant regarded Plaintiff as having a mental disability.

19. In February, 2016, Plaintiff sought advice from Defendant Faculty regarding the events which had occurred. Plaintiff was advised to get a record of her patient note with Dr. Anderson. Plaintiff was sent an unsigned document describing the Plaintiff as possibly, "Confabulating to cover a neurocognitive deficit", being unable to use the computers, and having difficulty navigating the infrastructure of the hospital. Dr. Anderson responded to the Plaintiff that he was the author of this document and further threatened the Plaintiff, "And by the way, you are not coming back."

20. At the time of this dismissal, Plaintiff had completed 7 out of the 12 months of her first year of residency training. Plaintiff's dismissal prohibited her from completing the academic year on June 30, which is valuable for employment.

21. On March 7, 2016, Plaintiff's attorney Ed Pohren sent Cichowski and Human Resources a letter outlining the deficiencies in their actions and complaining of unlawful

discrimination. Plaintiff later learned Dr. Geoffrey Anderson committed suicide on March 11, 2016.

22. On March 7, 2016, Dr. Cichowski sent Plaintiff an email stating that the Competency Committee had to consider Plaintiff's well-being, safety and "future potential".

23. Plaintiff went ahead and completed comprehensive psychological neurocognitive testing at her own expense. This was performed by Dr. Colleen Conoley, PhD, Clinical Neuropsychologist of Omaha. Dr. Conoley's result was negative for any neurocognitive disorder.

24. In May of 2016, Defendant then required Plaintiff to be retested for neurocognition with licensed Psychologist, Dr. Ty Callahan. Dr. Callahan reported that Plaintiff may have "mild limitations", but did not prohibit her from working in the residency program.

25. According to Defendant's documents, on or about June 15, 2016, Defendant determined that upon Plaintiff's return to the program, Plaintiff would be placed upon a Performance Improvement Plan, or PIP, which is part of the Defendant's Corrective Action Policy. This PIP was never communicated to the Plaintiff by the Program Administration (Dr. Cichowski, Dr. Porter, Dr. DeVrieze).

26. On or about July 1, 2016, Plaintiff was re-admitted into the residency program based upon Dr. Callahan's report. Upon her return, she was shunned by some of the doctors she was required to work with. Plaintiff was treated differently than similarly situated younger resident physicians who were of Eastern Indian or Middle Eastern descent, and were not disabled or regarded as disabled. Those employees, and employees who had not complained of discriminatory treatment, received more favorable treatment than Plaintiff.

27. Plaintiff continued to work in the program and successfully performed her work assignments. However, the Program Director, Dr. Cichowski and Associate Program, Dr. Bradley

DeVrieze, did not want to engage with Plaintiff. Plaintiff had similar experiences in the Graduate Medical Educational Office with Dr. Porter. It was clear to the Plaintiff that the Program Administration was avoiding her, and she felt shunned by, and uncomfortable with them.

28. In August, 2016, Plaintiff participated in a group evaluation with Faculty Attending Dr. Abu-Hazeem and the rest of the medical team at the completion of that particular monthly training rotation. In this method, the one member of the group leaves the room, while the rest of the team, including the Faculty Attending Physician, does a group evaluation of the person absent. Then the absent member returns to the group and receives the group's feedback, which is delivered by the Faculty Attending. Plaintiff received a negative evaluation, unlike everyone else in the group. She was told by Dr. Abu-Hazeem, among other things, that she "did not understand her role." Her Co-Intern told her, "What was just said to you by Dr. Abu-Hazeem was not what the group said about you." Her Co-Intern said, "What is this, bash Marybeth day?" This was also reported to the resident supervisor, Dr. Melanie Miller (not present at the meeting) by the team, who were very surprised by the negative treatment in that group evaluation.

29. On or about September 23, 2016, Dr. Cichowski and Dr. DeVrieze put Plaintiff on a "under review" status, which is a first step of discipline. There was no known reason for this disciplinary procedure. Between July and September, Plaintiff had never been told by Dr. Cichowski that she had any performance issues or recurring problems. The accusations that were allegedly made against Plaintiff were exaggerated and misrepresented.

30. In this September meeting, the formal documented criticisms had to do with Plaintiff's performance in the VA Ambulatory (Outpatient) Clinic with Faculty Attending Dr. Nathan Birch. Plaintiff was informed very forcefully by Dr. Cichowski, "That if you make one serious

mistake, you could be terminated." When Plaintiff told her Faculty Attending at the time, Dr. Timothy Griffin, what was happening, Dr. Griffin approached Dr. Cichowski and he asked her, "Why are you doing this to Marybeth", she is just like the other residents."

31. Plaintiff was performing well in her Performance Evaluations. Plaintiff completed all of the educational assignments as required by the Program, and sought to improve and develop herself professionally according to the goals of the Program.

32. Plaintiff continued to receive acceptable and good performance evaluations from many of the attending physicians that she worked with. Dr. Cichowski informed Plaintiff she had received good feedback from Dr. Birch on Plaintiff's performance in the "Under Review" period, stating to Plaintiff positively, "I'll take it!". Plaintiff worked very hard to improve her performance with Dr. Birch.

33. On December 20, 2016, Dr. Cichowski and Dr. DeVrieze then told Plaintiff she was placed on probation and was being continued on an "under review" status for ambulatory medicine. The reasons given in the probation document were misleading, inaccurate, and/or simply not true. There had been no prior discussion from Dr. Cichowski to the Plaintiff in the Under Review meetings that probation was imminent. When Plaintiff asked Dr. Cichowski if Plaintiff could transfer to a different residency program, Dr. Cichowski told Plaintiff, "There is no (Medicare) money available for your training." Plaintiff felt as though she were being set up to fail. Plaintiff was extremely distraught by the event of being put on probation and it affected her performance. She continued to do her work as best as possible under these conditions.

34. Plaintiff acknowledges that she did make a medical error of omission on a patient's discharge medication on December 24, 2016. Plaintiff's supervisor was not physically present at the

time. This error was caught and corrected by the Hospital's system of safety double checks by other medical staff in reviewing pharmacy orders. The error was corrected quickly and no harm was done to the patient. The Plaintiff notes that this is the first medication error she had ever made in her 13.5 months of residency training, and that she was also noted by Faculty for being "meticulous" and that a medication error like this was "not typical of Plaintiff." Other residents have made medication errors.

35. On January 3, 2017, Plaintiff was called to Dr. Cichowski's office and was terminated based upon the medical error of omission she had made on December 24, 2016.

36. Plaintiff documented her defense in her Appeal write-ups that she did at that time. There are other events of retaliation which occurred. The Defendant Corrective Action Policy specifies that the "Under Review" meetings held between the Program Director and the Resident are to be documented, signed by the Resident and a witness. This procedure was not followed by Dr. Cichowski. Plaintiff did not see any minutes of the meeting done at the time of the meeting. Plaintiff did not sign them, nor were they witnessed.

37. When Plaintiff raised her concerns to the Dean about this in January, 2017, the Dean stated, that "Plaintiff may not see the minutes." Plaintiff replied that she should, as Plaintiff was supposed to have signed the minutes. There is no structured documentation of these meetings.

38. It is Plaintiff's belief that Defendant and their agents set forth above attempted to build a case against Plaintiff to remove her from the program.

39. Plaintiff's perceived disability, age, national origin, and her former claim of discrimination were the motivating factors which led to her termination of employment.

40. As a result of all of the actions taken by the Defendant set forth above, Plaintiff has suffered and continues to suffer mental distress, anxiety, loss of sleep, interrupted eating habits, as well as loss of self-esteem and reputation in the medical community and the community at large, and has been prevented from presuming her career path in a timely manner.

## FIRST CAUSE OF ACTION

### Disability Discrimination

41. Plaintiff repeats the allegations as set forth in paragraphs 1-40 as though fully set forth herein.

42. Defendant failed to go through any interactive processes to determine if its perception of Plaintiff's disability was accurate, and how it could be accommodated.

43. Defendant regarded Plaintiff as having a disability and treated her differently than similarly situated non-disabled individuals, in violation of the Americans with Disabilities Act, 42 U.S.C. §12101 et seq.

## SECOND CAUSE OF ACTION

### Unlawful Retaliation

44. Plaintiff repeats the allegations as set forth in paragraphs 1-43 as though fully set forth herein.

45. Plaintiff was the victim of unlawful retaliation for filing her complaint of disability discrimination on March 8, 2016, and was terminated for doing so, in violation of the Americans with Disabilities Act, 42 U.S.C. §12101 et seq.

## THIRD CAUSE OF ACTION

### Age Discrimination

46. Plaintiff repeats the allegations as set forth in paragraphs 1-45 as though fully set forth herein.

47. Plaintiff was treated differently than similarly situated younger employees, in violation of the Age Discrimination and Employment Act, 29 U.S.C. §621 et seq.

## FOURTH CAUSE OF ACTION

### National Origin Discrimination

48. Plaintiff repeats the allegations as set forth in paragraphs 1-47 as though fully set forth herein.

49. Plaintiff was treated differently than other foreign physicians of Eastern Indian and/or Middle Eastern Indian descent, on the basis of her national origin, in violation of Title VII, 42 U.S.C. 2000(e) et seq.

## FIFTH CAUSE OF ACTION

### Violations of the Nebraska Fair Employment Practice Act

50. Plaintiff repeats the allegations as set forth in paragraphs 1-49 as though fully set forth herin

51. Defendant discriminated against Plaintiff on the basis of her perceived disability and national origin, in violation of Neb. Rev. Stat. §48-1104(1).

## SIXTH CAUSE OF ACTION

52. Plaintiff repeats the allegations as set forth in paragraphs 1-51 as though fully set forth herein.

53. Plaintiff was the victim of unlawful age discrimination under the Nebraska FEP.

## SEVENTH CAUSE OF ACTION

54. Plaintiff repeats the allegations as set forth in paragraphs 1-53 as though fully set forth herein.

55. Plaintiff was the victim of unlawful retaliation under the Nebraska FEP.

## EIGHTH CAUSE OF ACTION

56. Plaintiff repeats the allegations as set forth in paragraphs 1-55 as though fully set forth herein.

57. Plaintiff was the victim of unlawful disability discrimination under the Nebraska FEP.

## PRAYER FOR RELIEF

Based upon the foregoing, Plaintiff prays for relief as follows:

(A) Reinstatement in good standing to the Defendant's medical resident position and/or a transfer to a different facility with proper credit given for course work and training she received;

(B) All lost back pay, and 2 years front pay;

(C) Compensatory damages as allowed by law;

(D) Punitive damages as allowed by law;

(E) All costs and attorneys fees;

(F) Further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issues in Lincoln, Nebraska.

MARY E. CANNING, Plaintiff

By:   /s/ James C. Zalewski
James C. Zalewski, #16090
OLSON ZALEWSKI WYNNER LLP
575 Fallbrook Blvd., Suite 100
Lincoln, NE 68521
402/438-2500
DEFENDANTS FOR PLAINTIFF

## PRAECIPE

**TO CLERK OF SAID COURT:**

**PLEASE ISSUE SUMMONS,** in the above-entitled cause for service upon Defendant, Creighton University, % Andrea M. Jahn, JD, Associate General Counsel, University Privacy Officer, 2500 California Street, Omaha, NE 69178.

Please forward said Summons to James C. Zalewski of Olson Zalewski Wynner LLP, 575 Fallbrook Blvd., Suite 100, Lincoln, NE 68521, via email at jzalewski@ozwlaw.com, who will forward said Summons together with a copy of the Complaint to the Defendant by certified mail, return receipt requested, addressed as follows:

Ms. Andrea M. Jahn, JD
Associate General Counsel
University Privacy Officer
Creighton University
2500 California Street
Omaha, NE 68178

By: /s/ James C. Zalewski
James C. Zalewski, #16090