

8712 West Dodge Road • Suite 400 • Omaha, Nebraska 68114-3431
402.392.0101 • Fax 402.392.1011 • www.smithslusky.com

Edward F. Pohren
Direct Dial: 402-501-8107
epohren@smithslusky.com

March 7, 2016

Erica Cichowski, M.D.
Director, Internal Medicine Residency Training Program
Graduate Medical Education
Creighton University School of Medicine
601 North 30th Street, Ste. 1609
Omaha, NE 68131

Re: Mary E. Canning

Greetings:

Please be advised that this law firm is consulting with Dr. Canning. Dr. Canning is an employee of Creighton University.

On February 18, 2016, you advised Dr. Canning she had been placed on a leave of absence from duties she has under her Graduate Medical Education Program Agreement, with pay, effective immediately, and for the balance of the contract year ending June 30, 2016.

At the same time, you handed Dr. Canning a written notice, which you had signed and Joann Porter, M.D. had witnessed, informing her that the Creighton University Internal Medicine Program will not be renewing her residency program contract for the contract year for July 1, 2016, through June 30, 2017.

After her filing an appeal of those decisions, Dr. Canning received a single page of typed information, which is unsigned but dated February 16, 2016, but appears to be a report that was prepared ostensibly in regard to a visit Geoffrey Anderson, PhD had with Dr. Canning on February 16, 2016. This meeting with Dr. Anderson had been arranged, either by you or someone at your direction, to understand how our client learned information and if that style differed from the learning modes of other students in the program.

Dr. Canning did not agree to see Dr. Anderson for diagnostic purposes. She did not consent to his evaluating or assessing her mental health. Yet, what resulted from his meeting with Dr. Canning was his recommending that she undergo a clinical evaluation for cognitive impairments.

EXHIBIT 12  7-23-18



8712 West Dodge Road ▪ Suite 400 ▪ Omaha, Nebraska 68114-3431
402.392.0101 ▪ Fax 402.392.1011 ▪ www.smithslusky.com

Much worse, the one-page report, which we do not know who authored, questioned if Dr. Canning's capacity to learn and retain complex and abstract information was impaired due to "an organic (dementia)" or a "functional (anxiety or substance induced)" cause. The author(s) generalized that Dr. Canning does not "have a grasp of the basic infrastructure of the hospital or how to use the computers." It stated she did not seem "to be able to retain knowledge learned on her rotations." She was said not to be able "to synthesize the facts and data of a case and problem solve her way to a diagnosis or formulate a care plan." The report further assessed that Dr. Canning "cannot function independently." Indeed, the author(s) expressed that Dr. Canning may not be "capable of meeting the cognitive requirements of being a physician."

In another part of the report, the author(s) speculated that Dr. Canning could be "confabulating to cover a cognitive deficit."

The report's parting shot was this notation, i.e. that Dr. Canning "could make a critical error in patient care which could lead to injury or death of a patient."

Since it was just two days afterward that Dr. Canning was relieved of her duties through the end of the current contract year, and told that her contract for the contract year for July 1, 2016, through June 30, 2017, would not be renewed, we believe the report influenced the actions of February 18, 2016.

But by doing so, Creighton University violated the Americans with Disabilities Act.

From the foregoing, it is apparent that Dr. Canning was regarded as a person with an impairment involving mental health or substance use, which was substantially limiting to a major life activity, such as her learning, performing manual tasks, and/or working, even though she has no such impairment. Moreover, those regarding her as impaired thought she to be dangerous to others, such as patients, although no 'direct threat' analysis had been undertaken. Indeed, Dr. Canning had been performing the essential job functions of her contract, and she was without any notice of such beliefs by her supervisors.

After her meeting with Dr. Anderson, you and others decided to suspend Dr. Canning with pay through the end of the current contract year. You also determined not to renew her contract for the subsequent program year even though, a month earlier, a formal decision had been made and communicated to Dr. Canning, by you and others, that she must repeat her first year of training, under direct supervision, effective July 1, 2016, because her progress had not reached the level necessary for promotion to the next



8712 West Dodge Road ▪ Suite 400 ▪ Omaha, Nebraska 68114-3431
402.392.0101 ▪ Fax 402.392.1011 ▪ www.smithslusky.com

level of training. That abrupt change in direction resulted because you and others regarded Dr. Canning as impaired and a direct threat to patients.

Now, Creighton University wants Dr. Canning to attend a fitness for duty appointment with Ty Callahan, PhD, although it is unclear how such would be job-related and consistent with business necessity in view of the actions you took against Dr. Canning. The law does not permit employers to bolster the record in this way. But even if it might be available in regard to a suspended employee, Creighton's speculation that Dr. Canning poses a 'direct threat' to patient safety is not sufficient to trigger such a request under federal and state law. There must be a "significant risk" that "substantial harm" is likely to occur, based on objective and factual evidence previously assembled. No such evidence was disclosed to Dr. Canning in any of the materials, including evaluations, that Creighton furnished to her.

Moreover, if the aforementioned report was developed for such an analysis and determination, it is woefully lacking in the substance that the EEOC requires, namely an individualized evaluation of an individual's present ability to safely perform essential job functions, which itself must be based on a reasonable medical judgment that relies on the most current medical knowledge and/or the best available objective evidence, and a consideration of the following four factors: (i) the duration of the risk; (ii) the nature and severity of the potential harm; (iii) the likelihood that the potential harm will occur; and (iv) the imminence of the potential harm.

On this record, the direction that Dr. Canning report for a fitness for duty examination is contrary to the Americans with Disabilities Act as well.

On Dr. Canning's behalf, therefore, you are requested to rescind all of the adverse actions taken on February 18, 2016, regarding Dr. Canning, without resort to an appeal hearing or further process. If you have evidence of a direct threat due to an actual impairment, please identify what is the impairment Dr. Canning has and all objective and factual evidence you have amassed that it poses a "significant risk" that "substantial harm" will occur to patients, based on a reasonable medical judgment.

Assuming Creighton University is willing to do such, and it has objective and factual evidence to present, inclusive of any 'direct threat' to patients, then Dr. Canning is willing to engage in an interactive dialogue leading to a determination of a reasonable accommodation, if such is necessary, while she continues through the program.



8712 West Dodge Road ▪ Suite 400 ▪ Omaha, Nebraska 68114-3431
402.392.0101 ▪ Fax 402.392.1011 ▪ www.smithslusky.com

We look forward to an early response and to working with you.

Very truly yours,

Edward F. Pohren

EFP/ep
cc.   Dr. Mary E. Canning
      Lynne Caruso