---

**Page 1**

```
            IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF NEBRASKA

MARY E. CANNING,              )
                              )
          Plaintiff,          )  Case No. 4:18 CV-03023
                              )
     vs.                      )
                              )
CREIGHTON UNIVERSITY,         )
                              )  DEPOSITION OF
          Defendant.          )  TIMOTHY J. GRIFFIN, M.D.
_____)


          DEPOSITION OF TIMOTHY J. GRIFFIN, M.D., taken
before Tammy J. Hetherington, RPR, CSR, and General Notary
Public within and for the State of Nebraska, beginning at
1:53 p.m., on Monday, the 17th of December, 2018, at
12910 Pierce Street, Suite 200, Omaha, Nebraska, to be read
in evidence on behalf of the plaintiff, pursuant to the
Federal Rules of Civil Procedure and the within stipulations.




                    TAMMY J. HETHERINGTON, RPR, CSR
                            MTDS Reporters
                    7602 Pacific Street, Suite LL101
                        Omaha, Nebraska  68114
                             402-397-9669
                        www.mtdsreporters.com
```

---

**Page 2**

```
                        APPEARANCES

For the Plaintiff:     Mr. James C. Zalewski
                       Attorney at Law
                       575 Fallbrook Boulevard
                       Suite 100
                       Lincoln, Nebraska  68521
                       jzalewski@ozwlaw.com

For the Defendant:     Mr. David R. Buntain
                       Attorney at Law
                       12910 Pierce Street
                       Suite 200
                       Omaha, Nebraska  68144
                       dbuntain@clinewilliams.com

Also Present:          Ms. Mary Canning
                       Mr. David Meiergerd
```

---

**Page 3**

                                I N D E X
                                                              Page

DIRECT EXAMINATION BY MR. ZALEWSKI                              4
CROSS-EXAMINATION BY MR. BUNTAIN                               25

                                E X H I B I T S

No.   Description                                             Page

1     8/31/15 Faculty Evaluation of IM Resident                 9
2     11/4/15 Faculty Evaluation of IM Resident                10
3     2/16/16 Documentation                                    11
4     9/26/16 HMS - End of Service Evaluation for              15
      Interns
5     E-mail correspondence                                    21
6     12/20/16 Probation Letter                                21
7     Documentation by Dr. Cichowski                           22

---

**Page 4**

   1  (Whereupon, the parties have stipulated to waive
   2  Nebraska Rule 6-330, Sections 8(A) and (C),
   3  and the following proceedings were had, to wit:)
   4                  TIMOTHY J. GRIFFIN, M.D.,
   5             having been first duly sworn,
   6          was examined and testified as follows:
   7                    DIRECT EXAMINATION
   8  BY MR. ZALEWSKI:
   9  Q.  Would you state your name and address for the record,
  10      please.
  11  A.  Timothy J. Griffin, M.D.  My home address?
  12  Q.  You can give home or business, whatever you want.
  13  A.  11805 Oakair Plaza, Omaha, Nebraska, 68137.
  14  Q.  My name is Jim Zalewski.  I'm an attorney representing
  15      Mary Beth Canning in a case she's filed against
  16      Creighton, and I'm going to ask you some questions
  17      today about your knowledge of certain aspects of that
  18      case.
  19          Have you ever been deposed before?
  20  A.  Yes.
  21  Q.  So you kind of know how it works, where we have to give
  22      audible answers, so we don't talk over each other, and
  23      try to keep the record straight, right?
  24  A.  Yes.
  25  Q.  I just want to make sure.  A nod of the head, a shrug

**Page 21**

1  Q.  Did you see Mary Beth Canning make any significant
2      errors on patient discharges?
3  A.  Not at the VA.
4         (Exhibit No. 5 marked for identification.)
02:18PM 5  Q.  (BY MR. ZALEWSKI)  Dr. Griffin, the reporter has handed
6      you Exhibit 5, which it looks like an E-mail letter you
7      sent to Mary Beth Canning, and copied Dr. Joann Porter;
8      is that correct?
9  A.  Correct.
02:18PM 10  Q.  Did Mary Beth Canning ask you to write a letter of
11      support?
12  A.  Yes, she did.
13  Q.  And is this the letter that you wrote, then, to give to
14      the committee?
02:18PM 15  A.  Yes.
16  Q.  Does this accurately assess what your observations were
17      about the work she performed at that time?
18  A.  Yes.
19  Q.  Okay.
02:19PM 20         (Exhibit No. 6 marked for identification.)
21  Q.  (BY MR. ZALEWSKI)  Dr. Griffin, the reporter has handed
22      you Exhibit 6, which is the probation letter Mary Beth
23      Canning received.  Have you seen that document before?
24  A.  No.
02:19PM 25  Q.  The reason I ask is it seems that Exhibit 5, your

**Page 22**

1      letter, seems to track some of the allegations made in
2      Exhibit 6; that you kind of, like, responded to those
3      items, in a sense.  Does that refresh your recollection
4      any if you've ever seen this?
02:20PM 5  A.  I do not recall seeing this letter.
6  Q.  Did Mary Beth Canning ever meet with you and show it to
7      you?
8  A.  I don't recall.
9  Q.  If you don't -- I mean, you can't -- I just want to
02:20PM 10      know if you recall or not.  Mary possibly E-mailed it
11      to you?
12  A.  Possibly.  It does look like I must have seen this.
13  Q.  Okay.  Yeah, I just noticed there was kind of a
14      position and response between your letter of Exhibit 5
02:20PM 15      and this document, Exhibit 6; is that possible?
16  A.  It's possible.
17  Q.  Okay.  Did you get any response back from Dr. Cichowski
18      after you sent that --
19  A.  No.
02:21PM 20  Q.  -- or Dr. Porter, I'm sorry?
21  A.  No.
22  Q.  Okay.
23         (Exhibit No. 7 marked for identification.)
24  Q.  (BY MR. ZALEWSKI)  Dr. Griffin, the reporter has handed
02:21PM 25      you Exhibit 7, and I'm going to just refer you to --

**Page 23**

1      your part of it is on the bottom of the page, and
2      there's a little paragraph at the top.  These are notes
3      that were compiled by Dr. Cichowski.
4  A.  Okay.
02:21PM 5  Q.  And I just want you to read the Thursday, January 17
6      (sic), 2017 remarks, where it starts, Tim Griffin came
7      to the VA.
8  A.  January 14th?
9  Q.  Yes, and just read through that, and I have a question
02:21PM 10      to ask you.
11  A.  (Witness reviewing Exhibit 7.)
12         I agree with this, except for one sentence.
13  Q.  What sentence do you disagree with?
14  A.  He concluded the meeting by indicating he wanted me to
02:23PM 15      know that he supported the program's decision to
16      terminate, based on a long history of deficiency,
17      without significant enough improvement with program
18      support.  I do not remember saying that.
19  Q.  All right.  And I notice, on the first page of the
02:23PM 20      exhibit, there's a sentence that says, all of us make
21      mistakes, and this is talking about forgetting to
22      put the discharge of a patient on anticoagulants.  You
23      said, he fears all of us make mistakes?
24  A.  Doctors make mistakes, yes.
02:23PM 25  Q.  After that point in time, when you went and talked to

**Page 24**

1      Dr. Cichowski, did you have any other involvement with
2      any decisions with respect to Mary Beth Canning being
3      terminated from the program?
4  A.  No.
02:24PM 5  Q.  And did the appeals committee talk to you at all after
6      she filed that appeal?
7  A.  No.
8  Q.  Is Mary Beth Canning the oldest resident you've
9      supervised?
02:24PM 10  A.  I don't know how old she is, but I think so.
11  Q.  In the scheme of -- well, what's the average age of a
12      resident, if you can recall, if you can give me a
13      ballpark figure?
14  A.  25 to 30's.
02:24PM 15  Q.  All right.  And is that usually what it is every year
16      when you teach the residents?
17  A.  Yes.
18  Q.  Did you ever think she had a learning disability or
19      dementia?
02:24PM 20  A.  No.
21         MR. ZALEWSKI:  Just a minute.  I might
22      be done.  Let me talk to them.
23         (A break was taken.)
24         MR. ZALEWSKI:  I don't have any other
02:25PM 25      questions, Doctor.  I don't know if Mr. Buntain

29

1                    CERTIFICATE

2   STATE OF NEBRASKA    )
                       ) ss.
3   COUNTY OF DOUGLAS    )

4       I, TAMMY J. HETHERINGTON, RPR, CSR, and General

5   Notary Public in and for the State of Nebraska, do hereby

6   certify that TIMOTHY J. GRIFFIN, M.D., was by me duly sworn

7   to testify to the truth, the whole truth, and nothing but the

8   truth; and that the deposition as above set forth was reduced

9   to writing by me and is a true and accurate transcription of

10   the testimony given by said witness;

11      That the within and foregoing deposition was reported by

12   me at the time and place herein specified and in accordance

13   with the within stipulations, the reading and signing of the

14   witness to the deposition having been expressly waived;

15      That I am not counsel, attorney or relative of any of

16   the parties or otherwise interested in the event of this

17   suit.

18      IN TESTIMONY WHEREOF, I have placed my hand and Notarial

19   Seal this 26th day of December, 2018.

20

21          _____
                 General Notary Public

22

23

24

25

---

30

1         IN THE UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF NEBRASKA
2

   MARY E. CANNING,             )
3                          )
       Plaintiff,            )   Case No. 4:18 CV-03023
4                          )
       vs.                    )
5                          )
   CREIGHTON UNIVERSITY,        )
6                          )   COST CERTIFICATE
       Defendant.            )
7   _____)

8

9       CERTIFICATE OF DEPOSITION OF TIMOTHY J. GRIFFIN, M.D.
10               Taken in behalf of
11                 the plaintiff.

12   The Original Deposition is
    in the possession of:
13
    Mr. James C. Zalewski
14   Attorney at Law
    575 Fallbrook Boulevard
15   Suite 100
    Lincoln, Nebraska   68521
16

17   Costs:

18          _____
          Tammy J. Hetherington
19          Notary Public

20          Date:   12/26/18

21

22

23

24

25

then should could potentially complete that year but if any patient safety issues occurred that termination would be our only ethical option. I acknowledged that perhaps she feels this is unjust but from the CCC perspective, what would be more unjust is if we allow her to practice unsafely and she harms someone and she would never forgive herself because she has such a compassionate heart.

She asked Dr. Hurley if agrees with this. He indicated that he's a CCC member, has been involved with all the discussion and decision making and again reviewed the documentation and agrees with this course of action because it's clear that she is unable to progress adequately to be able to treat patients safely.

She gave us her pager and the meeting ended.

EXHIBIT 7
12-17-18 TH

Saturday Jan 7, 2017 VA Blue room

Joleen Fixley asked to speak with me. She updated me that MBC contacted her and Tim Griffin to seek a supportive letter from each of them. Joleen said MBC shared honestly, all the struggles she's been having since rounding with them earlier this academic year. Joleen reviewed much of what was outlined in MBC's Under Review and Probation letters, as well as the event that lead to MBC's termination. Joleen wanted me to know that the low patient volumes, much slower pace on VA HMS did allow her and the supervisor to safely provide direct supervision. Joleen feels MBC's kind, compassionate heart is her strength. She admitted that MCB spent a lot of time connecting emotionally with patients and families but this often seemed to distract her from the medical tasks at hand. Joleen felt MBC had improved this year as compared to her performance on VA HMS last academic year. An example she used was that MBC was able to call her when she recognized a deteriorating patient but was unable to develop a plan of care for that patient. While this was an improvement in MBC's performance, we both agreed that this action was at the level we expect from medical students, rather than interns. Joleen also admitted that after walking MBC through the assessment and development of a plan of care for that deteriorating patient, MBC was unable to document in the medical record without significant help. Joleen explained that she hoped MBC could remain in some sort of healthcare service career as she's passionate about helping people. She mentioned Family Medicine but upon further discussion, we both agreed that MBC does NOT have the knowledge and skills to be successful in the ICU rotations necessary to graduate from a Family Medicine program. Joleen clarified for me that she wants to support MBC but does NOT feel that MBC should be reinstated our program. She wants to support her in seeking alternative career options. She also is curious why MBC is appealing her termination because MBC shared with her that she no longer wants to continue on with Internal Medicine training and admitted she doesn't have the skill set for success in Internal Medicine. I clarified for Joleen that GME had offered MBC counsel that withdrawing from the program would keep the termination off her record, perhaps helping her be successful in seeking other career options. But if MBC elects to appeal her termination, then the option of withdrawing is no longer available to her. Joleen said she does not think MBC understands this and could be hurting her future options. I shared with Joleen that Dr. Porter let me know face to face that MBC was counseled on her time sensitive option to withdraw. Upon conclusion of this conversation with Joleen, I updated Dr. Porter on the potential confusion on MBC's part.

Thursday Jan 14, 2017

Tim Griffin came to VA Red Clinic to request to speak with me in private. He shared with me that MBC had contacted him for a letter of support. He wanted me to know that he felt obligated to provide her a letter of support because she's such a nice person. He also felt obligated to document that because of the VA HMS' low patient volume and slower pace, he did not experience an inability to provide safe patient care while providing her ongoing direct supervision. He did indicate that he felt the program had provided her plenty of support and opportunity to improve. He also admitted that his previous inpatient work at CUMC allows him to see that perhaps the fast pace and high patient volumes at that site could prove challenging with MBC and her limited skill set. In regards to her termination after forgetting to discharge a patient on anticoagulants, he fears that all of us make mistakes that could put patients in danger. I agreed but shared with him that an error of omission of a discharge medication should be caught with appropriate system support (and was caught in this case), but when a medical provider defends the error by admitting he/she had little

2

Attachment 3(d)

understanding of the clinical reason during the hospitalization, the core competency deficiencies are highlighted as the case of the error. He agreed. He concluded the meeting by indicating he wanted me to know that he is supportive of the program's decision to terminate based on a long history of deficiency without significant enough improvement with program support. I thanked him for his communication.

---

Email received 1/12/17 from an R3 Chief Resident:

To whom it may concern:

I had the opportunity to work with Mary Beth Canning in a hospital wards setting. I interacted with her and observed her performance over the rotation. She required continuous direct supervision in all aspects of her position as an internal medicine resident. I do not feel that she is able to successfully manage patients without constant direct supervision. In the name of patient safety and patient care I would not feel comfortable or safe with Mary Beth Canning training under my medical license.


Regards,

---

Documentation received by email on 1/15/17 by an R3 Chief Resident:
"Re: Dr. Mary Beth Canning

A resident must be both proficient in medical knowledge as well as efficient with the usage of their time. A deficiency in either makes the path toward success much more difficult. A deficiency in both of these areas is the most concerning as it can lead to lapses in patient care. I have worked both as a team member with Dr. Canning as well as observed her interacting with colleagues and other members of the health care team. It is my opinion that she has severe deficiencies in both of the above mentioned areas. I believe this puts a large strain on the medical team as a whole as well as the taff physicians in charge of overseeing her work. If I were a staff physician, I would not feel comfortable having her as a resident on the team."

---

Email received 1/15/17

Erica and everyone,

I have documented my concerns about Marybeth Canning in my evaluation. However, I continue to have concerns about her ability to function as a physician leader despite our program's efforts to give her more time to adequately acclimate and work to meet our minimum standards.

Physicians need to be able to have the ability to function as high level managers, managing patient care and the care team to achieve the best outcomes. With regard to Marybeth, I have significant concerns about her ability to manage small and basic tasks. Essentially, I do not believe that Marybeth has the needed skill level that is required by our profession. I do not believe she has the depth of inquiry, knowledge, or insight that one expects at this level. At this time, I believe we would be doing a disservice to our profession and program if we were to graduate someone that has continuously shown that she is not able to meet the basic demands and standards of our program or profession.

I would be happy to answer any questions or concerns with regard to this letter, please call, anytime.

Sincerely,

3

Attachment 3(d)