---

**Page 1**

```
          IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF NEBRASKA

MARY E. CANNING,              )
                              )
         Plaintiff,           )  Case No. 4:18 CV-03023
                              )
    vs.                       )
                              )
CREIGHTON UNIVERSITY,         )
                              )  DEPOSITION OF
         Defendant.           )  JOLEEN FIXLEY, M.D.
_____)
```

DEPOSITION OF JOLEEN FIXLEY, M.D., taken before Tammy J. Hetherington, RPR, CSR, and General Notary Public within and for the State of Nebraska, beginning at 1:44 p.m., on Thursday, the 13th of December, 2018, at Creighton University, Linn Building, Omaha, Nebraska, to be read in evidence on behalf of the plaintiff, pursuant to the Federal Rules of Civil Procedure and the within stipulations.

```
               TAMMY J. HETHERINGTON, RPR, CSR
                      MTDS Reporters
              7602 Pacific Street, Suite LL101
                   Omaha, Nebraska  68114
                       402-397-9669
                    www.mtdsreporters.com
```

---

**Page 2**

**APPEARANCES**

For the Plaintiff:     Mr. James C. Zalewski
                       Attorney at Law
                       575 Fallbrook Boulevard
                       Suite 100
                       Lincoln, Nebraska  68521
                       jzalewski@ozwlaw.com

For the Defendant:     Mr. David R. Buntain
                       Attorney at Law
                       12910 Pierce Street
                       Suite 200
                       Omaha, Nebraska  68144
                       dbuntain@clinewilliams.com

Also Present:          Ms. Mary Canning
                       Mr. David Meiergerd

---

**Page 3**

**I N D E X**

Page

DIRECT EXAMINATION BY MR. ZALEWSKI          4

**E X H I B I T S**

| No. | Description | Page |
|---|---|---|
| 1 | 8/31/15 Faculty Evaluation of IM Resident | 13 |
| 2 | 2/27/16 Letter by Mary Canning | 21 |
| 3 | 11/4/15 Faculty Evaluation of IM Resident | 25 |
| 4 | 2/16/16 Documentation | 33 |
| 5 | 9/26/16 HMS - End of Service Evaluation for Interns | 36 |
| 6 | Documentation by Dr. Fixley | 44 |
| 7 | Documentation by Dr. Cichowski | 45 |

---

**Page 4**

(Whereupon, the parties have stipulated to waive Nebraska Rule 6-330, Sections 8(A) and (C), and the following proceedings were had, to wit:)

(Exhibit Nos. 1 through 7 marked for identification.)

JOLEEN FIXLEY, M.D.,
having been first duly sworn,
was examined and testified as follows:

**DIRECT EXAMINATION**

BY MR. ZALEWSKI:

01:44PM  Q. Would you state your name and address for the record, please.

A. Joleen Elizabeth Fixley. My home address?

Q. That's fine. You can do that, or you can give an office address, whichever you prefer.

01:44PM  A. Yeah, my office address is 4101 Woolworth, the VA Medical Center, Omaha, Nebraska 68105.

Q. Dr. Fixley, my name is Jim Zalewski. We met just, a little bit, previously. I'm representing Mary Beth Canning in a case she's filed against Creighton in
01:44PM  Federal Court. I'm going to ask you some questions about some aspects of that case today.

Have you ever had your deposition taken before?

A. No.

Q. Let me tell you a little bit of the ground rules, how
01:44PM  it works. Everything that I'm asking you, and you're

**Page 45**

1  These are just simple yeses or nos:  Did anybody
2  from Creighton, the Clinical Competency Committee,
3  contact you when they were going to place Mary Beth
4  Canning on a performance improvement plan?
5  A.  No.  As I said, I've never been notified, questioned of
6  any resident being put on a performance plan, either
7  before or after they were put on a performance plan.
8  Q.  Or under review or probation, same answer?
9  A.  Right, that's not something I'm made aware of.
10 Q.  I just wondered if they asked for your input.  We're
11 thinking about doing this, how would you --
12 A.  No, not only am I not asked for my input, but after
13 somebody is put on a probation, I'm not notified that
14 that's the current status.
15 Q.  Okay.  You're not told?
16 A.  The only way that I would know is if somebody comes
17 back to me, as an intern, when I've already had them
18 for an intern, and by the time in the calendar, they
19 should be a second year.  That's the only way I would
20 know.
21 Q.  Okay.  The last one is Exhibit 7, and I want to point
22 out to you, the middle, big paragraph deals with you,
23 not the other stuff.  So I just want to ask you to read
24 that and tell me when you're done, okay?
25 A.  (Witness reviewing Exhibit 7.)  Where is this from?

**Page 46**

1  Q.  It's from notes that were given to us.  It was on a
2  grievance that was filed in a case.
3  A.  Okay.  What are you asking me about this document?
4  Q.  Well, you've read where the first sentence says, Joleen
5  Fixley asked to speak with me; do you see that in that
6  paragraph?  Is that accurate?
7  A.  Well, I'll read -- let me finish reading the paragraph,
8  but it strikes me there are several inaccuracies here.
9  Q.  And that's just what I wanted to ask you.
10 A.  Okay, sorry.  No, sorry, I'm trying to figure out who
11 this is, sorry.
12 Q.  It's Dr. Erica Cichowski.
13 A.  Okay.
14 Q.  They're her notes about a meeting that happened on
15 January 7th, is what --
16 A.  About a meeting?  Okay, hang on, hang on.  There's a
17 lot in here.
18 Q.  Right.
19 A.  So I have to strike my earlier statement about there
20 being inaccuracies, I apologize.  I need time to read
21 this completely before I make a remark about the
22 contents.
23 Q.  Sure.  That's why I wanted you to read it.
24 A.  (Witness reviewing Exhibit 7.)
25     Okay.  So I do recall this conversation --

**Page 47**

1  Q.  All right.  Let me ask you --
2  A.  -- with Dr. Cichowski, yes, and there is a -- this
3  patient that she alludes to, that I discussed with
4  Dr. Cichowski, this deteriorating patient that Mary
5  Beth was unable to develop a plan of care, and it was
6  also, as I stated earlier, she was not able to document
7  what the evaluation that we did was either.
8  Q.  Let me start you on the top here.
9  A.  So -- yes.
10 Q.  On the third -- you just told me you had no idea when
11 somebody went on a PIP or under review or probation,
12 but, yet, in the third sentence, it says, Joleen
13 reviewed much of what was outlined in MBC's under
14 review and probation letters.
15 A.  That's not correct.  I don't know what that is
16 referring to.
17 Q.  All right.
18 A.  Because I don't even know what under review and
19 probation letters are.
20 Q.  Did you --
21 A.  That's the one thing that is not correct.
22 Q.  Okay, that's not correct?  What about the sentence
23 where it says, Joleen wanted me to know that low
24 patient volumes, much slower pace on VA HMS did allow
25 her and the supervisor to safely provide direct

**Page 48**

1  supervision; did you say that?
2  A.  Yes, we did discuss the conditions of our hospital
3  service at the times that Mary Beth worked with our
4  team.
5  Q.  Okay.
6  A.  That, a lot of the time, specifically, the VA floor
7  patients can be complicated, history-wise, and have a
8  lot of past medical history, but overall, not as acute,
9  not as acutely ill as some of the patients at the other
10 hospitals.  It's more of a chronic -- it's more chronic
11 illness management, what we do on the floors now.  It's
12 necessary to recognize when a patient decompensates and
13 then know how to treat them appropriately.
14     And that one patient that I was referring to, that
15 was the case where we had a decompensating patient,
16 where she did the right thing in calling me, but then
17 was really not even, with my help, able to even
18 document what happened correctly, let alone treat the
19 patient without direct intervention.
20 Q.  Let me ask you this:  Moving down, there's a statement
21 there about a third of the way where it starts out,
22 Joleen clarified for me that she wants to support MBC,
23 but does not feel MBC should be reinstated in our
24 program; did you say that?  Is that accurate?
25 A.  I don't recall whether I made a statement regarding

## Page 53

CORRECTION SHEET

Upon reading the deposition and before subscribing thereto, the deponent, JOLEEN FIXLEY, M.D., indicated the following changes should be made.

Page   Line   Change/Reason for change:

Page   Line   Change/Reason for change:

Page   Line   Change/Reason for change:

Page   Line   Change/Reason for change:

Page   Line   Change/Reason for change:

Page   Line   Change/Reason for change:

Page   Line   Change/Reason for change:

Page   Line   Change/Reason for change:

_____
JOLEEN FIXLEY, M.D.

Subscribed and sworn to before me this _____ day of _____, 2018.

_____
NOTARY PUBLIC

## Page 54

CERTIFICATE

STATE OF NEBRASKA    )
                     ) ss.
COUNTY OF DOUGLAS    )

I, TAMMY J. HETHERINGTON, RPR, CSR, and General Notary Public in and for the State of Nebraska, do hereby certify that JOLEEN FIXLEY, M.D., was by me duly sworn to testify to the truth, the whole truth, and nothing but the truth; and that the deposition as above set forth was reduced to writing by me and is a true and accurate transcription of the testimony given by said witness;

That the within and foregoing deposition was reported by me at the time and place herein specified and in accordance with the within stipulations, the reading and signing of the witness to the deposition having not been waived;

That I am not counsel, attorney or relative of any of the parties or otherwise interested in the event of this suit.

IN TESTIMONY WHEREOF, I have placed my hand and Notarial Seal this 26th day of December, 2018.

_____
General Notary Public

## Page 55

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

MARY E. CANNING,           )
                           )
    Plaintiff,             )   Case No. 4:18 CV-03023
                           )
vs.                        )
                           )
CREIGHTON UNIVERSITY,      )
                           )   COST CERTIFICATE
    Defendant.             )
_____)

CERTIFICATE OF DEPOSITION OF JOLEEN FIXLEY, M.D.

Taken in behalf of the plaintiff.

The Original Deposition is in the possession of:

Mr. James C. Zalewski
Attorney at Law
575 Fallbrook Boulevard
Suite 100
Lincoln, Nebraska  68521

Costs:

_____
Tammy J. Hetherington
Notary Public

Date:  12/26/18

## Page 56

DATE:   12/26/18

TO:     JOLEEN FIXLEY, M.D.

RE:     CANNING vs CREIGHTON UNIVERSITY

Enclosed please find a transcribed copy of your deposition.  THIS IS A VALUABLE DOCUMENT, so please take a few minutes at this time to do the following:

1. Read your deposition thoroughly.  Photocopying or other reproduction of this document without the expressed consent of MTDS Reporters is strictly prohibited.

2. Make corrections only on the page entitled: CORRECTION SHEET.

3. Sign on the line indicated on the page entitled CORRECTION SHEET and have that page notarized.

4. Please return ONLY the Correction Sheet page within 30 days back to me.

5. Failure to read, sign, and return the Correction Sheet page within said time will be deemed as a waiver of signature.

Sincerely,


Tammy J. Hetherington, RPR

Enclosures




Tammy J. Hetherington, RPR, CSR
MTDS Reporters
7602 Pacific Street, Suite LL101
Omaha, Nebraska  68114
(402)397-9669

then should could potentially complete that year but if any patient safety issues occurred that termination would be our only ethical option. I acknowledged that perhaps she feels this is unjust but from the CCC perspective, what would be more unjust is if we allow her to practice unsafely and she harms someone and she would never forgive herself because she has such a compassionate heart.

She asked Dr. Hurley if agrees with this. He indicated that he is a CCC member, has been a part of this discussion and decision making and again, reviewed the documentation and agrees with this course of action because it is clear that she is unable to progress rapidly to be able to treat patients safely.

She gave us her pager and id indicating ended.

**EXHIBIT 7**
**2-13-18 TW**

Saturday Jan 7, 2017 at 9:45 am

Joleen Fixley asked to speak with me. She updated me that MBC contacted her and Tim Griffin to ask for supportive letter from each of them. Joleen said MBC shared honestly all the struggles she's been having while rotating with them earlier this academic year. Joleen reviewed much of what was outlined in MBC's Letter Notices and Evaluation Letters, as well as the events that lead to MBC's termination. Joleen wanted me to know that she recognizes MBC may have a slower pace as VA HCS did allow her and the supervisor to safely provide direct supervision. Joleen feels MBC's big, compassionate heart is her strength. She admitted that MBC spends a lot of time connecting emotionally with patients and families but this often seemed to distract her from the medical tasks at hand. Joleen felt MBC had improved this year as compared to her performance at VA HCS last academic year. As an example she noted that at HCS, she was able to call her when she recognized a deteriorating patient but was unable to develop a plan of action for that patient. While this was an improvement in MBC's performance, we both agreed that this action was at the level we expect from medical students, rather than interns. Joleen also admitted that after walking MBC through the assessment and development of a plan of care for that deteriorating patient, MBC was unable to document in the medical record without significant help. Joleen explained that she hoped MBC could remain in some sort of healthcare related career as she's passionate about helping people. She mentioned Family Medicine but upon further discussion, we both agreed that MBC does NOT have the knowledge and skills to be successful in the ICU rotations necessary to graduate from a Family Medicine program. Joleen clarified for me that she wants to support MBC but does NOT feel that MBC should be reinstated our program. She wants to support her in seeking alternative career options. She also is curious why MBC is appealing her termination because MBC shared with her that she no longer wants to continue on with Internal Medicine training and admitted she doesn't have the skill set for success in Internal Medicine. I clarified for Joleen that GME had offered MBC counsel that withdrawing from the program would keep the termination off her record, perhaps helping her be successful in seeking other career options. But if MBC elects to appeal her termination, then the option of withdrawing is no longer available to her. Joleen said she does not think MBC understands this and could be hurting her future options. I shared with Joleen that Dr. Porter let me know face to face that MBC was counseled on her time sensitive option to withdraw. Upon conclusion of this conversation with Joleen, I updated Dr. Porter on the potential confusion on MBC's part.

Thursday Jan 14, 2017

Tim Griffin came to VA Red Clinic to request to speak with me in private. He shared with me that MBC had contacted him for a letter of support. He wanted me to know that he felt obligated to provide her a letter of support because she's such a nice person. He also felt obligated to document that because of the VA HMS low patient volume and slower pace, he did not experience an inability to provide safe patient care while providing her ongoing direct supervision. He did indicate that he felt the program had provided her plenty of support and opportunity to improve. He also admitted that his previous inpatient work at CUMC allows him to see that perhaps the fast pace and high patient volumes at that site could prove challenging with MBC and her limited skill set. In regards to her termination after forgetting to discharge a patient on anticoagulants, he fears that all of us make mistakes that could put patients in danger. I agreed but shared with him that an error of omission of a discharge medication should be caught with appropriate system support (and was caught in this case), but when a medical provider defends the error by admitting he/she had little