United States Court of Appeals
For the Eighth Circuit
_____

No. 19-3286
_____

Mary E. Canning

*Plaintiff - Appellant*

v.

Creighton University

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Nebraska - Lincoln
_____

Submitted: October 21, 2020
Filed: April 21, 2021
_____

Before SMITH, Chief Judge, LOKEN and GRUENDER, Circuit Judges.
_____

SMITH, Chief Judge.

    In 2017, Creighton University ("Creighton") dismissed Dr. Mary E. Canning from its medical-residency program. Canning sued Creighton for wrongful termination, alleging that Creighton discriminated against her based on age and

disability and also retaliated against her. The district court[1] granted summary judgment in favor of Creighton. We affirm.

I. *Background*

In July 2015, Canning, age 57, began her first year as an internal-medicine resident at Creighton. The Clinical Competency Committee ("Committee") is responsible for overseeing each resident's progress. Drs. Erica K. Cichowski and Joan Porter were the relevant Committee members during Canning's residency.

Throughout Canning's first year, various doctors expressed concerns about her basic skills and level of competence. When the Committee met in December 2015 to review each resident's progress, it concluded that Canning had not progressed in several areas, necessitating that she repeat her intern year. Canning "agreed with [that] decision." Am. Compl. at 2–3, *Canning v. Creighton Univ.*, No. 4:18-cv-03023-JMG-CRZ (D. Neb. 2018), ECF No. 21.

Shortly thereafter, Canning agreed to meet with Dr. Geoffrey Anderson, a psychologist. After his first meeting with Canning, Dr. Anderson expressed "concerns about [Canning's] capacity to learn and retain complex and abstract information . . . whether . . . due to an organic cause (dementia) or functional (anxiety or substance induced)" and that she might "make a critical error in patient care." Index in Opp'n to Mot. for Summ. J., Exs. 8–24, at 5, *Canning v. Creighton Univ.*, No. 4:18-cv-03023-JMG-CRZ (D. Neb. 2019), ECF No. 53-8.

Two days after Canning met with Dr. Anderson, Drs. Cichowski and Porter informed her that (1) she was being placed on a leave of absence with pay until a

---

[1]The Honorable John M. Gerrard, Chief Judge, United States District Court for the District of Nebraska.

-2-

fitness-for-duty evaluation deemed her safe for patient care and (2) her contract would not be renewed regardless of whether she was deemed fit for duty.

About a week later, Canning filed a grievance alleging that a third-year resident told a "joke" that she had dementia. About another week later, Canning's attorney Edward Pohren sent Dr. Cichowski a letter outlining Dr. Cichowski's alleged acts of unlawful discrimination and objecting to the requirement that she submit to a fitness-for-duty evaluation. In response, Creighton's general counsel proposed a resolution: Canning could repeat her first year of residency if she was cleared for duty after submitting to the evaluation.

Neuropyschologist Dr. Colleen Connolly evaluated Canning and found her to be in good mental health. Canning then submitted to a fitness-for-duty evaluation by Dr. Ty Callahan, who also reviewed Dr. Connolly's report. Similarly, Dr. Callahan did not find any evidence of a medical or psychiatric condition compared to peers similar in age, gender, and education. Thus, the Committee allowed Canning to return in July 2016 to repeat her intern year. But Canning "continued to struggle with her fund of medical knowledge, the completion of assessments, and development of care plans." *Canning v. Creighton Univ.*, No. 4:18-cv-3023-JMG-CRZ, 2019 WL 4671180, at *5 (D. Neb. Sept. 25, 2019). In September 2016, after reviewing supervising physicians' evaluations of Canning since July 2016, the Committee placed Canning on "under review" status. In December 2016, it placed her on probation.

Only a few days after being placed on probation, Canning made a patient-safety error. Specifically, Canning discharged a patient admitted for a pulmonary embolism without providing the patient with a prescription for an anticoagulant. Though Canning's supervisors were not present when she discharged the patient, they had previously reviewed the discharge plans with her, directing her to prescribe the

patient a novel anticoagulant.[2] Fortunately, before the patient left the hospital, a nurse noticed the error and provided the patient with the appropriate prescription. Canning conceded that her error was "[e]xtremely serious." Index in Supp. of Mot. for Summ. J., Canning Dep. Excerpts, at 40, *Canning v. Creighton Univ.*, No. 4:18-cv-03023-JMG-CRZ (D. Neb. 2018), ECF No. 46-1.

The Committee then recommended Canning's dismissal from the residency program, citing the "significant patient safety near miss" as its reason. Index in Supp. of Mot. for Summ. J., Canning Dep. Ex. 19, at 1, *Canning v. Creighton Univ.*, No. 4:18-cv-03023-JMG-CRZ (D. Neb. 2018), ECF No. 46-14.

Canning sued Creighton for: (1) age discrimination, (2) disability discrimination, and (3) retaliation. Canning alleged age discrimination under the Age Discrimination in Employment Act (ADEA) and Nebraska Fair Employment Practices Act (NFEPA) and disability discrimination and retaliation under the Americans with Disabilities Act (ADA) and NFEPA. As the district court stated, ADEA, ADA, and NFEPA claims for age and disability discrimination "share a common analysis," all requiring but-for causation. *Canning*, 2019 WL 4671180, at *6 n.1, *9 n.3. For retaliation claims "[i]t is unclear whether a causal connection under the NFEPA requires but-for causation, or only requires the protected activity to be a motivating factor for the adverse employment action." *Id.* at *10 (citing *Ludlow v. BNSF Ry. Co.*, 788 F.3d 794, 802 (8th Cir. 2015)). However, the district court did not find that the distinction was material. *See id.* at *10–11. The district court granted summary judgment in Creighton's favor regarding all three claims, concluding that Canning failed to show causation.

---

[2]Canning disputes that she made the error under direct supervision because there were no other doctors physically present when she discharged the patient. However, she does not dispute Creighton's evidence that she received prior directions from her supervisors about discharging the patient on the proper anticoagulants.

-4-

II. *Discussion*

Canning argues that summary judgment was not proper on any claim. We review the grant of summary judgment de novo. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If there is a genuine dispute, we view the disputed facts in the light most favorable to the nonmovant. *Torgerson*, 643 F.3d at 1042. If, viewing the whole record, a reasonable factfinder could not find for the nonmovant, there is no genuine issue for trial. *Id.*

As an initial matter, Canning challenges Creighton's January 2017 decision to terminate her from the medical school's postgraduate medical education program, not its decision not to renew her contract in December 2015.[3] Accordingly, we focus, as the district court did, on the undisputed facts following Canning's first year of internal residency.

A. *Age Discrimination*

Canning argues that the district court erred when it concluded that no rational factfinder could conclude that her termination was motivated by age. We disagree.

"[T]he ADEA prohibits discrimination against employees, over the age of 40, because of their age." *Tramp v. Associated Underwriters, Inc.*, 768 F.3d 793, 798 (8th Cir. 2014) (quoting *Holmes v. Trinity Health*, 729 F.3d 817, 821 (8th Cir. 2013)). A claim under the ADEA requires proof by a preponderance of the evidence that age was the but-for cause of the challenged employer decision. *Id.* at 800. When there is no direct evidence of discrimination, the plaintiff may establish an inference of discrimination under the *McDonnell Douglas*[4] burden-shifting framework. *Tramp*,

---

[3]*See Canning*, 2019 WL 4671180, at *6.

[4]*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

-5-

768 F.3d at 800. First, the plaintiff must satisfy a four-part prima facie case of age discrimination: (1) the plaintiff "is over 40 years old"; (2) the plaintiff "met the applicable job qualifications"; (3) the plaintiff "suffered an adverse employment action"; and (4) "there is some additional evidence that age was a factor in the employer's termination decision." *Id.* (quotation omitted).

Once the plaintiff establishes this prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the termination. *Id.* If the employer articulates such a reason, the plaintiff is then required to show that the employer's reason was pretext for discrimination. *Id.* Though the burden of production shifts to the employer, the plaintiff always bears "the burden of persuasion to prove that age was the 'but-for' cause of the termination." *Id.* (quoting *Rahlf v. Mo-Tech Corp.*, 642 F.3d 633, 637 (8th Cir. 2011)).

1. *Creighton's Reason for Termination*

The district court concluded that Canning satisfied the prima facie elements, and Creighton has not contended otherwise on appeal. Therefore, we assume she has met her prima facie case.

Assuming Canning made a prima facie case for age discrimination, the burden of production shifts to Creighton "to articulate some legitimate, nondiscriminatory reason for the employee's [termination]." *McDonnell Douglas*, 411 U.S. at 802. "[T]he defendant's explanation of its legitimate reasons must be clear and reasonably specific." *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 258 (1981). However, this burden is "not onerous" and does not require proof by a preponderance of the evidence. *Torgerson*, 643 F.3d at 1047 (quotation omitted).

Creighton produced a legitimate, nondiscriminatory reason for terminating Canning in January 2017 by explaining that Canning made an "egregious" error

-6-

affecting "patient safety," "despite supervisor and attending efforts." Index in Supp. of Mot. for Summ. J., Canning Dep. Ex. 19, at 2. Thus, Creighton satisfied its burden.

### 2. *Canning's Evidence of Pretext*

Because Creighton produced a legitimate, nondiscriminatory reason for Canning's termination, Canning must show that this reason was pretextual. We agree with the district court that Canning's proof falls short of showing this requirement.

After an employer produces a legitimate, nondiscriminatory reason for termination, the burden shifts to the terminated employee to put forth proof that the proffered reason was not the true reason for discharge because it was merely "a pretext for discrimination." *Kohrt v. MidAm. Energy Co.*, 364 F.3d 894, 897 (8th Cir. 2004) (quoting *Hitt v. Harsco Corp.*, 356 F.3d 920, 924 (8th Cir. 2004)).

Although "a plaintiff may establish pretext by showing that the employer did not truly believe the employee engaged in the conduct justifying termination," if the employer's proffered reason was "truly . . . the reason for the plaintiff's termination," we will not "decide whether [that] reason was wise, fair, or even correct." *Main v. Ozark Health, Inc.*, 959 F.3d 319, 325 (8th Cir. 2020) (quoting *Wilking v. Cty. of Ramsey*, 153 F.3d 869, 873 (8th Cir. 1998)). "[F]ederal courts do not sit as a super-personnel department that reexamines an entity's business decisions. Rather, our inquiry is limited to whether the employer gave an honest explanation of its behavior." *Wilking*, 153 F.3d at 873 (cleaned up).

"Under the ADEA at the pretext stage, 'proof that the explanation is false is necessary . . . .'" *Tramp*, 768 F.3d at 804 (quoting *Tusing v. De Moines Indep. Cmty. Sch. Dist.*, 639 F.3d 507, 516 (8th Cir. 2011)). But more is also needed. *Id.* "[T]he plaintiff must [also] show . . . that age discrimination was the real reason." *Id.* (first alteration in original) (quoting *Tusing*, 639 F.3d at 516). Because "[t]he burden to prove pretext 'merges with the ultimate burden of persuading the court that [Canning

-7-

was] the victim of intentional discrimination,'" *Smith v. URS Corp.*, 803 F.3d 964, 968 (8th Cir. 2015) (quoting *Torgerson*, 643 F.3d at 1046), the plaintiff "must do more than simply create a factual dispute as to the issue of pretext; he must offer sufficient evidence for a reasonable trier of fact to infer discrimination," *Mathews v. Trilogy Commc'ns, Inc.*, 143 F.3d 1160, 1165 (8th Cir. 1998). "The ultimate question is whether the employer intentionally discriminated . . . ." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146 (2000). Thus, Canning's age must have been "the factor that made a difference" as to whether or not she was terminated. *Tramp*, 768 F.3d at 801.

Canning argues that the district court's summary-judgment order erred in concluding that pretext was not established. She gives two reasons: (a) *Reeves* precludes district courts from determining the propriety of summary judgment after an employer has offered a legitimate, nondiscriminatory reason for termination; and (b) Creighton's explanation for termination was false because (i) it was not Creighton's policy or practice to respond by terminating her, (ii) she was meeting Creighton's reasonable expectations at the time of termination, and (iii) Creighton treated similarly situated coworkers differently.

### a. Reeves *Analysis*

Canning's first contention is incorrect. *Reeves* does not preclude district courts from determining the propriety of summary judgment after an employer has offered a legitimate, nondiscriminatory reason for termination. *Reeves* does not mandate submission to the jury in every case where pretext is at issue. Although *Reeves* allows the jury to infer discrimination from the falsity of an employer's explanation, it does not prevent a court from entering summary judgment when no rational factfinder could conclude that the action was discriminatory. *See Reeves*, 530 U.S. at 148.

-8-

b. *Falsity*

We also reject Canning's second argument that summary judgment was improper. She asserts that there is an issue of fact regarding whether Creighton's reason was false, demonstrated by: (i) Creighton's contravention of its policy or practice; (ii) Canning's compliance with Creighton's reasonable expectations at the time of termination; and (iii) Creighton's differential treatment of Canning compared to similarly situated coworkers.

i. *Employer's Policy or Practice*

An "employee may demonstrate pretext by showing that 'it was not the employer's policy or practice to respond to such problems in the way it responded in the plaintiff's case.'" *Ridout v. JBS USA, LLC*, 716 F.3d 1079, 1084 (8th Cir. 2013) (quoting *Erickson v. Farmland Indus., Inc.*, 271 F.3d 718, 727 (8th Cir. 2001)). Canning argues that summary judgment was improper because it was not Creighton's policy or practice to respond to these types of near-miss incidents by terminating the resident responsible. However, she fails to show this.

She cites the testimony of two doctors to show that Creighton had a practice not to terminate residents who failed to prescribe a drug. However, neither doctors' testimony supports her position. Dr. Timothy J. Griffin specifically stated, "I don't know what" the Committee does with residents who make a prescription error. Index in Opp'n to Mot. for Summ. J., Dr. Griffin's Dep., at 15, *Canning v. Creighton Univ.*, No. 4:18-cv-03023-JMG-CRZ (D. Neb. 2019), ECF No. 53-5. And Dr. Joleen Fixley "could not remember the last time" that a resident made a "clerical" prescription error because it occurred "so infrequent[ly]." Index in Opp'n to Mot. for Summ. J., Dr. Fixley's Dep., at 5, *Canning v. Creighton Univ.*, No. 4:18-cv-03023-JMG-CRZ (D. Neb. 2019), ECF No. 53-7. Moreover, neither doctor was a Committee member and, therefore, did not participate in termination decisions. Thus, neither doctors' testimony establishes that it was against Creighton's policy to terminate a resident who failed to prescribe the appropriate medication upon discharge.

-9-

### ii. *Employer's Reasonable Expectations*

"[A] strong showing that the plaintiff was meeting his employer's reasonable expectations at the time of termination may create a fact issue as to pretext when the employer claims that the employee was terminated for poor or declining performance." *Ridout*, 716 F.3d at 1084.

Canning argues that she was meeting Creighton's reasonable expectations of first-year residents. However, she fails to make "a strong showing," *id.*, by emphasizing supervisors' statements that she was "performing at an average level," and "acceptable for a first year resident," Appellant's Br. at 41, 42 (citing Dr. Griffin's testimony and Dr. Peter T. Silberstein's evaluation). "Average" and "acceptable" performance, Appellant's Br. at 41, 42, is not "evidence of a strong employment history," *Main*, 959 F.3d at 326 (quoting *Strate v. Midwest Bankcentre, Inc.*, 398 F.3d 1011, 1020 (8th Cir. 2005)). But even if it was, "evidence of a strong employment history will not alone create a genuine issue of fact regarding pretext and discrimination." *Id.* (quoting *Strate*, 398 F.3d at 1020) (emphasizing that the "culminating event"—rude and insubordinate behavior in a meeting—that led to the employee's termination occurred after she received positive year-end evaluations). As in *Main*, the "culminating event"—the patient near-miss—here occurred after Canning received any positive evaluations or feedback, and she concedes it was a serious error. *See id.*

### iii. *Similarly Situated Coworker Inquiry*

Finally, Canning attempts to establish pretext using the similarly situated coworker inquiry. But this inquiry requires proof "that the other employees were 'similarly situated in all relevant respects.'" *Ridout*, 716 F.3d at 1085 (quoting *Lynn v. Deaconess Med. Ctr.-W. Campus*, 160 F.3d 484, 487 (8th Cir. 1998)). The comparators must have had violations of "comparable seriousness." *Id.* (emphasis omitted) (quotation omitted). And "[t]he comparators 'must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct

-10-

without any mitigating or distinguishing circumstances.'" *Ebersole v. Novo Nordisk, Inc.*, 758 F.3d 917, 925 (8th Cir. 2014) (quoting *Burton v. Ark. Sec'y of State*, 737 F.3d 1219, 1230 (8th Cir. 2013)). Here, however, Canning has not provided any evidence of other residents similarly situated in all respects.

Because Canning has not shown that Creighton's reason for termination was pretextual, the district court's entry of summary judgment for Creighton on Canning's age-discrimination claim was not erroneous.

### B. *Disability Discrimination*

Canning argues that Creighton regarded her as disabled and discriminated against her based on her alleged disability. We affirm summary judgment in favor of Creighton on Canning's disability-discrimination claim.

The ADA prohibits employers from discriminating against their employees on the basis of a disability. 42 U.S.C. § 12112(a). As with Canning's ADEA claim, we evaluate her wrongful-termination claim under the ADA using the *McDonnell Douglas* framework because she has not offered direct evidence of discrimination. *See Ryan v. Cap. Contractors, Inc.*, 679 F.3d 772, 776–77 (8th Cir. 2012); *see supra* Section II.A.

First, Canning must establish a prima facie case under the ADA, showing three elements: (1) she was disabled or regarded as a disabled person under the ADA, (2) she "was qualified to perform the essential functions of the job," and (3) she "suffered an adverse employment action under circumstances giving rise to an inference of unlawful discrimination." *Ryan*, 679 F.3d at 777 (quoting *Kozisek v. Cnty. of Seward,* 539 F.3d 930, 934 (8th Cir. 2008)).

-11-

The district court concluded that Canning did not make a prima facie case under the ADA. We agree.[5] The first element requires the plaintiff to show that she was a disabled person, or a person regarded as disabled, within the meaning of the ADA. A "disability" is: "a physical or mental impairment that substantially limits one or more major life activities of [an] individual," "a record of such an impairment," or "being regarded as having such an impairment." 42 U.S.C. § 12102(1). "The 'ability to perform cognitive functions on the level of an average person' constitutes a major life activity. Accordingly, thinking and concentrating qualify as 'major life activities' under the ADA." *Battle* v. *UPS, Inc.*, 438 F.3d 856, 861 (8th Cir. 2006) (first quoting *Brown v. Lester E. Cox Med. Ctrs.*, 286 F.3d 1040, 1045 (8th Cir. 2002); and then quoting *Shaver v. Indep. Stave Co.*, 350 F.3d 716, 720 (8th Cir. 2003)). Canning argues that Creighton regarded her as disabled.

Under the ADA, an employee is "regarded as having . . . an impairment" if he or she establishes that the employer has subjected the individual "to an action prohibited under [the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). Thus, a person is regarded as disabled if her employer mistakenly believes that she has a physical impairment that substantially limits one or more major life activities or mistakenly believes that an actual, non-limiting impairment substantially limits one or more major life activities. *Brunko v. Mercy Hosp.*, 260 F.3d 939, 942 (8th Cir. 2001).

---

[5]The district court also noted that what Canning asserted as a disability was unlikely a qualifying disability under the ADA because "the cognitive functioning required of a first-year internal medicine resident far exceeds that required of an average person in the general population." *Canning*, 2019 WL 4671180, at *10. We do not address this specific issue. Instead, we assume that Canning's proffered disability qualifies as a disability within the ADA and conclude that Creighton did not *regard* Canning as disabled.

-12-

In support of her claim, Canning primarily cites events that occurred during her initial first year of residency. Importantly, the adverse-employment action at issue is her termination in January 2017. Even if Creighton regarded her as disabled in December 2015, Canning must show that Creighton regarded her as disabled when it terminated her in January 2017. She has not.

Before Creighton allowed Canning to return to repeat her intern year, two doctors evaluated her. Their assessments ruled out any kind of disorder. Dr. Callahan specifically evaluated Canning for fitness for duty as a condition of her return. As a result of his evaluation, Creighton allowed Canning to return to the program. Thus, Canning has not shown any genuine dispute of material fact as to whether Creighton (or its decisionmakers) regarded her as disabled during her second year at Creighton and that it terminated her as a result. Thus, we affirm.

### C. *Retaliation*

Lastly, Canning asserts that Creighton retaliated against her for engaging in protected activity when it dismissed her from the residency program in January 2017. She points to two protected activities: (1) Canning authorized her attorney to send Creighton a letter in March 2016, complaining that Creighton violated Canning's rights under the ADA; and (2) Canning filed a complaint against another medical resident.

A retaliation claim under the ADA also requires either direct evidence of retaliation or an inference of retaliation under the *McDonnell Douglas* burden-shifting framework. *Hustvet v. Allina Health Sys.*, 910 F.3d 399, 412 (8th Cir. 2018). Specifically, in retaliation cases the appellant must have made a prima facie case showing three elements: "(1) [she] engaged in statutorily protected activity; (2) the employer took an adverse action against [her]; and (3) . . . a causal connection [existed] between the adverse action and the protected activity." *Id.* As with her ADEA claim, Canning retains the burden of persuasion regarding but-for causation.

-13-

*Id.* If Canning made a prima facie case, then the burden would shift to Creighton to produce a non-retaliatory reason for the discharge. *Id.* If Creighton produced such a reason, Canning then would then regain the burden of production to present evidence that the proffered reason was pretext for retaliation. *Id.*

The district court did not err when it granted summary judgment in Creighton's favor regarding the retaliation claim.

### 1. *The Letter from Canning's Attorney*

The parties do not dispute the first two prima facie elements. The district court granted summary judgment after concluding Canning did not show proof of the third element: that a causal connection existed between her attorney's letter and her January 2017 dismissal. We hold that Canning failed to satisfy the third element.

In general, if evidence shows that the defendant would have terminated the employment whether or not the employee exercised her rights, the employer faces no liability. *See Ebersole*, 758 F.3d at 923–24. Here, Canning asks us to hold that a jury could reasonably impose liability on an employer who gave the plaintiff what she wanted (re-employment) as a result of her protected activity. We decline to do so.

Here, the evidence shows that Creighton would have terminated Canning's employment in January 2017 whether or not her attorney sent Creighton a letter in March 2016. Creighton did not terminate Canning until she made a serious patient-safety error while she was on probation in December 2016.

Moreover, Canning's protected activity led to a benefit rather than an adverse action. At the time, the Committee had informed Canning in February 2016 that her contract would not be renewed. Canning then engaged in protected activity via her attorney in March 2016. Because of Canning's attorney's letter and subsequent negotiations with Creighton's counsel, in April 2016 Creighton agreed to let Canning

-14-

return in July 2016 to repeat her intern year, conditioned on her passing a fit-for-duty evaluation.

Rather than retaliation, Canning's attorney's letter obtained her readmission into the program. Accordingly, there is no causal connection between her attorney's letter in March 2016 and Creighton's termination of Canning—10 months later—in January 2017. Thus, we agree with the district court that Canning's retaliation claim fails because she has not established a prima facie case.

### 2. *Canning's Complaint Against Another Medical Resident*

Finally, Canning argues that the "district court erred in finding that a jury could not conclude that Defendant retaliated for Plaintiff's discrimination complaint against [fellow medical resident] Goyal." Appellant's Br. at 59. However, the district court never made this conclusion because Canning never raised this issue. Therefore, we decline to consider it on appeal. *See Ames v. Nationwide Mut. Ins. Co.*, 760 F.3d 763, 770 (8th Cir. 2014) ("[A] party may not raise an issue for the first time on appeal as a basis for reversal." (quotation omitted)).

### III. *Conclusion*

For these reasons, we affirm the grant of summary judgment in Creighton's favor.

_____